UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE CARLOS RODRIGUEZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>F. PUTNAM, ET AL.,<br><br>　　　　Defendants. | CASE NO. CV 11-8772-CJC (PJW)<br><br>FINAL REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

This Final Report and Recommendation is submitted to the Hon. Cormac J. Carney, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California. For the reasons discussed below, it is recommended that Defendants' Motion to Dismiss the First Amended Complaint be granted and the action be dismissed with prejudice.[1]

---

[1] The original Report and Recommendation has been amended to address two of Plaintiff's concerns raised in his objections. First, he complains that the Court never ruled on his motion file a Second Amended Complaint. (Objections at 1.) Plaintiff is simply mistaken. On August 30, 2012, the Court issued an order, among other things, denying his motion to file a Second Amended Complaint. (Doc. No. 65 at 2.) Plaintiff also complains that the Court overlooked the fact that he had sought injunctive relief against the Secretary of the Department of Corrections and the Warden of Lancaster State Prison. (Objections at 5.) The Court did not overlook that fact and notes, for the reasons explained herein, that Plaintiff has not stated a cognizable claim and, therefore, there is no basis upon which to grant

I.

SUMMARY OF FACTS[2]

Plaintiff Jose Rodriguez is a prisoner at California State Prison in Lancaster, California. (First Amended Complaint ("FAC") at 9.) He is allergic to peanuts. (FAC at 9.) On May 6, 2009, shortly after being transferred from North Kern State Prison to Lancaster, he filed a grievance, requesting that he be provided with a substitute when peanut butter or food with peanuts was served. (FAC at 9, Exh. A.) He claimed that he had a note from the medical staff at North Kern Prison, mandating that he receive a "therapeutic diet" to accommodate his peanut allergy. (FAC at 9, Exh. A.) He also claimed that a correctional officer at Lancaster showed the kitchen staff the note but was "given the run around." (FAC at 9, Exh. A.)

A month after filing the grievance, Plaintiff received information from a prison dietitian regarding food allergies and how to get a note from the medical staff at Lancaster for his food allergy. (FAC at 9.) Since Plaintiff already had a note from North Kern Prison, he responded the same day, pointing out that he had a note and asking what he should do next. (FAC at 9-10.) Two days later, the dietitian responded that Lancaster did not provide medical notes for allergies. (FAC at 10.) She also explained that, because the prison provided prisoners with an extra 800-1000 calories per day,

---

injunctive relief. There are no other changes to the Report and Recommendation and, for that reason, Plaintiff was not given another opportunity to object.

[2] The facts are taken from the First Amended Complaint and the exhibits submitted with it and are accepted as true for purposes of this Report and Recommendation.

it did not make special accommodations for prisoners with allergies. (FAC at 10.)

The next day, Plaintiff wrote back to the dietitian, asserting that his allergy was a medical issue and requesting information on dietary allowances and his next steps. (FAC at 10.) Within two weeks, the dietitian responded that the prison did not honor allergy notes from other prisons and did not provide a substitution when the prison served food with peanuts. (FAC at 10.) She also enclosed the information requested by Plaintiff regarding dietary allowances. (FAC at 10.)

Around this time, Plaintiff met with a supervising cook to explain his grievance and to obtain additional information. (FAC at 10.) He told the cook that he did not have a problem with the prison lunches but that he did have a problem with the breakfasts. (FAC at 10.) According to Plaintiff, the supervising cook told him that his grievance "would be fully granted." (FAC at 10.)

On July 2, 2009, Plaintiff's grievance was granted and he was promised a protein substitute when the prison served peanut butter. (FAC at Exh. A.) He continued to receive meat for lunch, which the prison had already been serving him before his grievance was granted to accommodate his allergy. (FAC at 11.) However, he still was not being accommodated at breakfast. (FAC at 11.) Though he wanted to appeal to the next level in the grievance process, he was unable to because the time to appeal had expired. (FAC at 12.)

On August 21, 2009, Plaintiff filed a second grievance. (FAC at 12.) On January 28, 2010, he was interviewed by Defendant Putnam, a supervising cook, about this grievance. (FAC at 14, Exh. E.) Putnam told him that the prison was not required to accommodate him through a

3

special diet and that prisoners were expected to take responsibility for their allergies, just as they would if they were on the outside. (FAC at 14, Exh. E.) Plaintiff told him that, because he was indigent, he could not afford to supplement his meals and, even if he could, frequent lockdowns and modified programming made it difficult for him to access the prison commissary to buy his own food. (FAC at 15.) Putnam denied Plaintiff's second grievance and told him that he would no longer receive meat lunches. (FAC at 14, Exh. E.) Thereafter, when the prison served peanut butter for lunch, Plaintiff was not given a substitute and was limited to eating the four slices of bread and the carrots that came with the lunch. (FAC at 21.)

Plaintiff claims that he suffered two allergic reactions to food at Lancaster. (FAC at 15, 18, 22.) The first was the day after the informal denial of his second grievance when he accidentally ate peanuts. (FAC at 15, Exh. G.) He experienced a congested throat, an itchy mouth, and a headache. (FAC at 15.) He was sent to the medical unit and given Benadryl. (FAC at 15.) After three hours, he felt better and was released. (FAC at 15.)

Plaintiff's second allergic reaction occurred about four months later, when he accidentally ate cake with peanut frosting. (FAC at 18.) He experienced an itchy mouth, a headache, chest pain, and shortness of breath. (FAC at 18.) He was sent to the medical unit and given oxygen. (FAC at 18.) After a few hours, he felt better and was released. (FAC at 19.)

## II.

## ANALYSIS

Plaintiff brings this civil rights action under 42 U.S.C. § 1983, alleging that Defendants: (1) violated his Eighth Amendment right

4

against cruel and unusual punishment through their deliberate indifference to his serious medical needs by failing to supplement his diet with an alternative to peanuts when peanut products were served; (2) violated his Fourteenth Amendment right to equal protection by: (a) denying his request for a special diet because his need was based on a peanut allergy while, at the same time, providing special diets to prisoners who were allergic to gluten or who had problems with their kidneys; and (b) discriminating against him on the basis of indigency because he could not afford to buy his own food from the prison commissary to supplement his diet; and (3) violated his rights under the Americans with Disabilities Act and the Rehabilitation Act. (FAC at 7-8, 23-24.)

Plaintiff seeks: (1) a preliminary and permanent injunction to compel Defendants to accommodate him; (2) nominal, compensatory, and punitive damages; (3) a declaratory judgment; and (4) costs. (FAC at 25.) Defendants have moved to dismiss the First Amended Complaint with prejudice. (Motion to Dismiss at 7.) For the following reasons, the Court concludes that dismissal with prejudice is warranted.

A.   Standard of Review

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state a claim upon which relief can be granted. Under this rule, the Court must grant a motion to dismiss if a plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). In deciding the motion, the district court accepts as true the material allegations of the complaint and construes them in a light most favorable to the plaintiff. *See Newman v. Sathyavaglswaran*, 287 F.3d 786, 788 (9th Cir. 2002). In order to

survive a motion to dismiss for failure to state a claim, the plaintiff must allege sufficient facts to support a "plausible," not merely "conceivable," claim for relief. *See Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). The district court considers not only the complaint, but also the exhibits accompanying it in deciding a motion to dismiss. *Cooper v. Pickett*, 137 F.3d 616, 622-23 (9th Cir. 1997).

B. **Plaintiff's Claims Against Defendants Fail Because § 1983 Liability Cannot Be Based on Denying Grievances or Supervising Other Employees**

Plaintiff sues Defendants Putnam, Stephens, Russell, Thomas, Sebra, Briggs, and Foston solely for their roles in denying his grievances, which is not a basis for liability under § 1983. *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). He sues Defendants Sullivan and Cate, the prison warden and the secretary of the California Department of Corrections and Rehabilitation, solely for their roles as supervisors of the other Defendants, which is also not a basis for liability under § 1983. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Because Plaintiff does not allege that Defendants played any role in providing his meals or in refusing his request for a substitute for peanut products or in formulating the policy that resulted in him not receiving an accommodation, Defendants are entitled to dismissal of the claims against them. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("[P]laintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."; rejecting proposition that mere knowledge or acquiescence is sufficient to establish supervisory liability).

C. **Plaintiff's Eighth Amendment Claim Fails Because, Even If True, His Allegations Do Not Amount to Serious Harm or Deliberate Indifference**

Plaintiff alleges that his peanut allergy is a serious medical condition and that Defendants' failure to accommodate him by providing him with different food when peanut products were served amounted to deliberate indifference. Defendants argue that Plaintiff's allegations do not state a claim under the Eighth Amendment. For the following reasons, the Court sides with Defendants.

In order to establish an Eighth Amendment claim, Plaintiff must show that: (1) he had an objectively serious medical need; and (2) prison officials were deliberately indifferent to it. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Generally speaking, a prison official cannot be found deliberately indifferent to a serious medical need for failing to provide a prisoner with a special diet to accommodate a food allergy because the Constitution does not require such an accommodation. *Prien v. Smith*, 411 Fed. Appx. 982, 984 (9th Cir. 2011); *Douglas v. Banks*, No. C 09-3191, 2012 WL 822824, at *7 (N.D. Cal. Mar. 9, 2012); *Joseph v. Mercer Cnty. Comm'rs*, No. 3:12 CV 847, 2012 WL 6018125, at *13 (N.D. Ohio Dec. 3, 2012) (dismissing with prejudice prisoner's Eighth Amendment claim grounded in alleged indifference to peanut allergy). Rather, to prevail on an Eighth Amendment claim under Plaintiff's theory of the case, he would have to show that he was not provided with adequate nourishment to sustain his health. *See LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993). Plaintiff has not done so here. Accepting his representations in the First Amended Complaint and the exhibits that he attached to it as true, Plaintiff makes clear that he was fed three meals a day every

day. It is also clear that, although at times portions of a meal contained peanut butter or peanut products, which he did not eat, the prison was providing him with 800-1000 more calories per day than he needed to maintain his health.

Additionally, Plaintiff has not shown that Defendants were deliberately indifferent to a substantial risk of serious harm to him. He does not allege that Defendants intentionally served him peanut butter sandwiches to make him sick or that they intentionally concealed what they were serving him. Rather, he alleges that Defendants did not provide him with a substitute when they served peanuts or peanut butter as part of a meal. Standing alone, this does not amount to deliberate indifference. This is particularly so in the context of this case, where Defendants took steps to accommodate Plaintiff's allergy. For example, they provided him with: (1) access to a dietitian so that he could understand how to work around his allergy; (2) materials to educate him on food allergies and nutrition; (3) 800-1000 more calories per day than he needed to maintain his health; and (4) prompt medical attention for his two allergic reactions. Thus, in this case, Plaintiff's complaint--that he was not getting a substitute for peanuts--did not amount to a serious medical need and, even it did, Defendants were not deliberately indifferent to it.

D.  <u>Plaintiff's Fourteenth Amendment Claim Fails Because Defendants' Actions Were Rationally Related to a Conceivable Government Purpose</u>

Plaintiff claims that Defendants' failure to provide him with meals containing something other than peanut butter violated his right to equal protection because, at the time that they were denying his

8

requests, they were accommodating other prisoners who had other food restrictions/needs. He also contends that Defendants' conduct amounted to discrimination based on wealth (or lack of it) because he was not able to supplement his meals by buying food from the commissary because he did not have money to pay for it. These claims, too, are subject to dismissal with prejudice.

Medical infirmities are not subject to heightened scrutiny under the Fourteenth Amendment. *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 357 (2001). Nor is indigency. *Rodriguez v. Cook*, 169 F.3d 1176, 1179 (9th Cir. 1999). Thus, in order to prevail on an equal protection claim, Plaintiff would have to show that Defendants' refusal to provide him with something other than peanut butter was not rationally related to a conceivable government purpose. *Garrett* at 367. Plaintiff cannot do so here. There is a conceivable purpose for not providing Plaintiff with a substitute for peanut butter, which the prison staff explained throughout the process and which Plaintiff does not dispute, i.e., in lieu of providing a substitute for individual prisoners, the prison provided all prisoners with 800-1000 extra calories so that they would receive sufficient nourishment even if they were unable to eat certain things. Defendants' refusal to offer a substitute was clearly rationally related to this purpose. *See, e.g., Ward v. Walsh*, 1 F.3d 873, 877 (9th Cir. 1993) ("The prison has a legitimate interest in running a simplified food service, rather than one that gives rise to many administrative difficulties." (citation omitted)). As such, his equal protection claim fails.

E. **Plaintiff's Americans with Disabilities Act and Rehabilitation Act Claims Fail Because His Allergy Is Not Encompassed in the Definition of Disability**

Plaintiff has sued Defendants under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). These Acts define disability as a physical or mental impairment that substantially limits one or more of a person's major life activities. 42 U.S.C. § 12102(1)(A); 29 U.S.C. § 705(20)(A)(i). Assuming eating to be a major life activity, a minimal limitation on it, like the one at bar, does not amount to a substantial limitation. *Fraser v. Goodale*, 342 F.3d 1032, 1040 (9th Cir. 2003); *Land v. Baptist Med. Ctr.*, 164 F.3d 423, 425 (8th Cir. 1999) (holding severe peanut allergy does not substantially limit major life activity under definition of disability). Thus, Plaintiff's ADA and RA claims fail.

F. **Plaintiff's Claims Against Defendants Fail Because Defendants Are Entitled to Qualified Immunity**

Finally, even assuming that Plaintiff had alleged a constitutional violation, Defendants are entitled to dismissal based on qualified immunity.

The doctrine of qualified immunity protects government officials --like Defendant prison employees--from suit where their conduct does not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). There was (and is) no clearly established statutory or constitutional right to a substitute for foods with peanuts when they are served in a prison. This is particularly so where, as here, the prison provided prisoners with 800-1000 more calories per day than

they needed to maintain their health. Thus, even if Plaintiff's claims were valid, Defendants would be entitled to immunity from suit.

## III.

## RECOMMENDATION

For the foregoing reasons, IT IS RECOMMENDED that the Court issue an Order: (1) accepting this Final Report and Recommendation; and (2) dismissing the action with prejudice.

DATED: May 8, 2013.

PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Civil Rights\RODRIGUEZ 8772\Final R&R_FAC_MTD.wpd